UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| BRIAND DAVID HEBERT,<br><br>      Plaintiff,<br><br>v.<br><br>KILOLO KIJAKAZI,<br><br>      Defendant. | Case No. 2:22-cv-01614-NJK<br><br>**ORDER** |

      This case involves judicial review of administrative action by the Commissioner of Social Security ("Commissioner") denying Plaintiff's application for disability insurance benefits pursuant to Title II of the Social Security Act. Currently before the Court is Plaintiff's motion to reverse or remand. Docket No. 16. The Commissioner filed a response and cross-motion to affirm. Docket Nos. 17, 18. Plaintiff filed a reply to the Commissioner's response. Docket No. 19.

**I.    STANDARDS**

    A.    <u>Disability Evaluation Process</u>

      The standard for determining disability is whether a social security claimant has an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also* 42 U.S.C. § 1382c(3)(A). That determination is made by following a five-step sequential evaluation process. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987) (citing 20 C.F.R. §§ 404.1520, 416.920). The first step addresses whether the claimant is currently engaging in substantial gainful activity. 20 C.F.R. §§ 404.1520(b), 416.920(b).[1] The second step addresses whether the claimant has a medically determinable impairment that is severe or a combination of impairments that significantly limits basic work activities. 20 C.F.R. §§

---

[1] The five-step process is largely the same for both Title II and Title XVI claims. For a Title II claim, however, a claimant must also meet insurance requirements. 20 C.F.R. § 404.130.

404.1520(c), 416.920(c). The third step addresses whether the claimant's impairments or combination of impairments meet or medically equal the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, 416.926. There is then a determination of the claimant's residual functional capacity ("RFC"), which assesses the claimant's ability to do physical and mental work-related activities. 20 C.F.R. §§ 404.1520(e), 416.920(e). The fourth step addresses whether the claimant has the residual functional capacity to perform past relevant work. 20 C.F.R. §§ 404.1520(f), 416.920(f). The fifth step addresses whether the claimant is able to do other work considering the residual functional capacity, age, education, and work experience. 20 C.F.R. §§ 404.1520(g), 416.920(g).

### B. Judicial Review

After exhausting the administrative process, a claimant may seek judicial review of a decision denying social security benefits. 42 U.S.C. § 405(g). The Court must uphold a decision denying benefits if the proper legal standard was applied and there is substantial evidence in the record as a whole to support the decision. *Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005). Substantial evidence is "more than a mere scintilla," which equates to "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, ___ U.S. ___, 139 S.Ct. 1148, 1154 (2019). "[T]he threshold for such evidentiary sufficiency is not high." *Id.*

## II. BACKGROUND

### A. Procedural History

On January 2, 2018, Plaintiff protectively filed an application for Social Security Disability Insurance benefits pursuant to Title II of the Social Security Act. Administrative Record ("A.R.") 431-34. Plaintiff alleged a disability starting February 25, 2015. A.R. 433. Plaintiff's initial application was denied on April 23, 2018. A.R. 238-42. He then filed a request for reconsideration, A.R. 243, which was denied, A.R. 244-46. On September 18, 2018, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ") regarding his benefits determination. A.R. 248-49. ALJ John Cusker held an initial hearing on February 21, 2020, A.R.

116-73, and a supplemental hearing on July 10, 2020, A.R. 83-115.  He issued a decision denying Plaintiff benefits on November 17, 2020.  A.R. 215-24.

Plaintiff filed a request for review by the Appeals Council on December 28, 2020.  A.R. 360-63.  The Appeals Council ordered Plaintiff's case remanded for another hearing before an ALJ on July 27, 2021.  A.R. 232-37.  The Council determined remand to be appropriate because ALJ Cusker found Plaintiff capable of performing his past work, which had requirements that exceeded Plaintiff's RFC limitations.  A.R. 234.  The remand order directed the ALJ to give further consideration to whether Plaintiff could perform his past work, to reconsider Plaintiff's RFC limitations, and to obtain supplemental evidence from a vocational expert clarifying the effects of Plaintiff's RFC limitations on his occupational base.  A.R. 234-35.

ALJ Cynthia Hoover conducted the subsequent hearing on May 22, 2022.  A.R. 52-82.  Corinne Porter testified at that hearing as a vocational expert.  A.R. 74-80.  On June 15, 2022, ALJ Hoover issued a decision again denying Plaintiff benefits.  A.R. 20-39.  Plaintiff again requested that the Appeals Council review the ALJ decision.  A.R. 425-30.  On August 19, 2022, the Appeals Council declined to change the ALJ's decision, A.R. 1-5, making it the final decision of the Commissioner.  *See* 42 U.S.C. § 405(g).  The instant case was filed on September 23, 2022.  Docket No. 1.

B.  The Decision Below

The ALJ's decision followed the five-step sequential evaluation process set forth in 20 C.F.R. § 416.920.  A.R. 20-39.  The ALJ first found that Plaintiff met the insured status requirements through December 31, 2020.  A.R. 23.  At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity from February 25, 2015, through December 31, 2020.  *Id.*  At step two, the ALJ found that Plaintiff has the following severe impairments: osteoarthrosis, obesity, trauma- and stressor-related disorder/PTSD, and depression.  *Id.*  At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  A.R. 23-27.  The ALJ found that Plaintiff has the residual functional capacity to perform light work as defined by 20 C.F.R. § 404.1567(b) except that he can: (1) lift and/or carry

3

twenty pounds occasionally and ten pounds frequently; (2) stand and/or walk for six hours and sit for six hours in an eight-hour workday; (3) occasionally climb ramps, stairs, ladders, ropes, or scaffolds; (4) occasionally stoop, kneel, crouch, and crawl; (5) engage in frequent handling with the right upper extremity with no restrictions to the left upper extremity; (6) understand, remember, and carry out simple tasks with concentration, persistence, and pace for simple tasks; (7) have occasional contact with the public and co-workers; and (8) must avoid exposure to extreme cold, vibrations, and hazards such as unprotected heights and dangerous moving machinery like chainsaws and jackhammers. A.R. 27-37. At step four, the ALJ found that Plaintiff is unable to perform his past relevant work as a delivery driver, inventory clerk, truck driver, or courier. A.R. 37. At step five, the ALJ found that jobs exist in significant numbers in the national economy that Plaintiff can perform, based on Plaintiff's age, education, work experience, and residual functional capacity. A.R. 38-39. The ALJ considered the Medical Vocational Rules, which provide a framework for finding Plaintiff disabled or not. In addition to considering the Medical Vocational Rules, the ALJ took testimony from a vocational expert that an individual with the same residual functional capacity and vocational factors as Plaintiff could perform work as a marking clerk, dispatch marker, and routing clerk. A.R. 38. In doing so, the ALJ defined Plaintiff as a younger individual age 18-49. A.R. 37. The ALJ found that Plaintiff has at least a high school education and further found the transferability of job skills to be immaterial. *Id.* Based on these findings, the ALJ found Plaintiff not disabled from February 25, 2015, through December 31, 2020. A.R. 39.

### III. ANALYSIS

Plaintiff raises one issue on appeal. He submits that the ALJ erred by failing to state clear and convincing reasons for why she rejected his symptoms and limitations testimony. Docket No. 16 at 7-17. The Commissioner responds that the ALJ supported her evaluation of Plaintiff's subjective symptom testimony with substantial evidence. Docket No. 17 at 3-8.

Credibility and similar determinations are quintessential functions of the judge observing witness testimony, so reviewing courts generally give deference to such assessments. *See, e.g.*, *Icicle Seafoods, Inc. v. Worthington*, 475 U.S. 709, 714 (1986). In the Social Security context,

4

"[t]he ALJ is responsible for determining credibility." *Andrews v. Shalala*, 53 F.3d 1035, 1039-40 (9th Cir. 1995). An ALJ's assessment of a claimant's testimony is generally afforded "great weight" by a reviewing court. *See, e.g.*, *Gontes v. Astrue*, 913 F. Supp. 2d 913, 917-18 (C.D. Cal. 2012) (citing *Weetman v. Sullivan*, 877 F.2d 20, 22 (9th Circ. 1989) and *Nyman v. Heckler*, 779 F.2d 528, 531 (9th Cir. 1985)). If an ALJ's determination to discount a claimant's testimony is supported by substantial evidence, a court should not second-guess that determination. *Chaudhry v. Astrue*, 688 F.3d 661, 672 (9th Cir. 2012).[2]

When evaluating whether an ALJ's determination is supported by substantial evidence, courts "look[] to all the pages of the ALJ's decision." *Kaufmann v. Kijakazi*, 32 F.4th 843, 851 (9th Cir. 2022); *see also Kennedy v. Colvin*, 738 F.3d 1172, 1178 (9th Cir. 2013) (noting that Ninth Circuit case law "simply requires an ALJ to discuss and evaluate the evidence that supports his or her conclusion; it does not specify that the ALJ must do so under the heading 'Findings'" (internal quotation omitted)). "Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld." *Shaibi v. Berryhill*, 883 F.3d 1102, 1108 (9th Cir. 2017) (quoting *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005)). Further, when "the evidence is susceptible to more than one rational interpretation, this [C]ourt must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Khan v. Saul*, 855 Fed. App'x 343, 345 (9th Cir. 2021) (quoting *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012)). *See also Magallanes v. Bowen*, 881 F.2d 747, 755 (9th Cir. 1989) ("As a reviewing court, we are not deprived of our faculties for drawing specific and legitimate inferences from the ALJ's opinion").

The ALJ is required to engage in a two-step analysis to evaluate a claimant's testimony as to pain and other symptoms: (1) determine whether the individual presented objective medical evidence of an impairment that could reasonably be expected to produce some degree of pain or other symptoms alleged; and (2) if so, whether the intensity and persistence of those symptoms

---

[2] The regulations previously asked the ALJ to assess "credibility." Social Security Ruling 96-7p. The current regulations require the ALJ to instead "evaluate" the claimant's statements. Social Security Ruling 16-3p. This change does not alter the deferential nature of the Court's review.

limit an individual's ability to perform work-related activities. *See* Social Security Ruling 16-3p, 2017 WL 5180304. In the absence of evidence of malingering, an ALJ may only reject a claimant's testimony about the severity of symptoms by giving specific, clear, and convincing reasons. *See Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). Factors that an ALJ may consider include inconsistent daily activities, an inconsistent treatment history, and other factors concerning the claimant's functional limitations. *See* Social Security Ruling 16-3p, 2017 WL 5180304.

Here the ALJ concluded that Plaintiff presented objective medical evidence of an impairment that could reasonably be expected to produce the symptoms alleged. A.R. 28-29. The ALJ concluded, however, that Plaintiff's "statements concerning the intensity, persistence, and limiting effects of these symptoms were not consistent with the medical evidence and other evidence in the record." A.R. 29. Plaintiff submits that, in reaching this conclusion, the ALJ failed to connect medical evidence to her rejection of Plaintiff's symptom testimony. Docket No. 16 at 9. Plaintiff further submits that the ALJ failed to satisfactorily discuss why she rejected his symptom testimony and instead "merely recited the medical evidence and various medical opinions." *Id.* at 15.

The Court finds that, in rejecting Plaintiff's symptom testimony, the ALJ thoroughly canvassed the medical evidence in the record. She noted that x-rays taken after Plaintiff was in a car accident showed only mild or moderate observable symptoms. A.R. 29 (citing 1020-21). She further noted that an MRI in 2015 also showed only mild observable symptoms. *Id.* (citing 1022-23). The ALJ discussed Plaintiff's history of specialized pain management, observing that he generally responded well to treatment. A.R. 29-31 (citing 701, 870-914, 957, 1020-29, 1034-42). The ALJ conducted this review immediately after stating that Plaintiff's back injury was "considered and … discussed under the diagnosis of osteoarthrosis." A.R. 29. It is reasonable to infer that the ALJ intended this review of Plaintiff's treatment history, with repeated references to observations of mild, well managed symptoms, to constitute why she found that Plaintiff's recitation of his symptoms was inconsistent with the objective medical evidence. *Khan*, 855 Fed.

App'x at 345 (internal citation omitted).  The Court, therefore, finds that the ALJ did not err in her review and discussion of the objective medical evidence in the record.

Plaintiff further submits that the ALJ erred by failing to discuss certain notations of his pain in the record.  Docket No. 16 at 13-14.  The ALJ observed that Plaintiff "consistently reported" benefiting from his pain management treatment and that "medications were helpful/effective in managing his pain."  A.R. 31 (citing 878, 881, 890, 902, 905, 951, 954, 957, 960).  The ALJ further observed that Plaintiff "was consistently noted to look comfortable, fairly relaxed, and/or in no distress.  *Id.* (citing 878, 884, 893, 896, 899, 902, 908, 957, 960, 1035).  Some of the records the ALJ reviewed in making this observation are the same records Plaintiff alleges that the ALJ failed to discuss.  *Compare* A.R. 31 *with* Docket No. 16 at 13.  It is the ALJ's responsibility to resolve conflicts in the record.  *Parra v. Astrue*, 481 F.3d 742, 750 (9th Cir. 2007).  When there are conflicts in the record, it is the ALJ's conclusion that must be upheld.  *Shaibi*, 883 F.3d at 1108.  Here, contrary to Plaintiff's assertion, the ALJ did review and consider the records and notations of pain from Plaintiff's pain management appointments.  The Court, therefore, finds no error.

Plaintiff further submits that the ALJ erred in considering his treatment conservative.  Docket No. 16 at 11-12.  Plaintiff cites *Lapeirre-Gutt v. Astrue*, 382 Fed. App'x 662, 664 (9th Cir. 2010), to support the proposition that trigger point injections combined with narcotics do not constitute conservative treatment.  Docket No. 16 at 11-12.  Plaintiff misreads *Lapeirre-Gutt*.  The *Lapeirre-Gutt* court assumed that the plaintiff's "regimen of powerful pain medications and injections can constitute conservative treatment."  382 Fed. App'x at 664 (internal quotation).  The *Lapeirre-Gutt* court did find the ALJ's conclusion that the plaintiff's treatment was conservative erroneous.  *Id.*  However, that was because the plaintiff had already undergone spinal fusion surgery and "the record [did] not reflect that more aggressive treatment options [were] appropriate or available," and not merely because the plaintiff was receiving a combination of pain medication and trigger point injections.  *Id.*  Moreover, this Court, and courts in the Ninth Circuit generally, have rejected contentions that trigger point injections combined with pain medication constitute

more than conservative treatment. *See, e.g., Bartlett v. Kijakazi*, 2022 WL 2274558, *4 (D. Nev. 2022). Accordingly, the Court finds no error.

Plaintiff also submits that the ALJ's failure to inquire into and consider why Plaintiff did not seek treatment from 2015 to 2017 constitutes error. Docket No. 16 at 9-11. Plaintiff submits, and indeed the record reflects, that this is because he did not have health insurance at the time. *Id.* at 10; A.R. 142. An ALJ may not use failure to seek treatment to discredit a claimant's testimony if the claimant had a valid reason for not doing so, including lacking medical insurance. *Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007). However, even if an ALJ commits an error, that error will not warrant reversal if it is harmless. *Tomasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008). An error is harmless "when it is clear from the record that the ALJ's error was inconsequential in the ultimate disability determination." *Id.* (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 885 (9th Cir. 2006)). Here, the ALJ supported her evaluation of Plaintiff's testimony with substantial evidence beyond his failure to seek treatment from 2015 to 2017. Accordingly, any error in failing to consider why Plaintiff did not seek treatment from 2015 to 2017 is harmless.

## IV.    CONCLUSION

For the reasons discussed above, the Court **DENIES** Plaintiff's motion to remand, Docket No. 16, and **GRANTS** the Commissioner's countermotion to affirm, Docket No. 18. The Clerk's Office is instructed to **enter final judgment** accordingly and to **close** this case.

IT IS SO ORDERED.

Dated: February 27, 2023.

_____
NANCY J. KOPPE
UNITED STATES MAGISTRATE JUDGE

8